JUANITA EASTERLIN BY HER NEXT FRIEND, JOE O'BANNON, *Appellant,* v. ADA EASTERLIN, AS ADMINISTRATRIX, ETC., *Appellee.*

At the common law, the marriage of a man and the birth of a child, subsequent to the making of a will by him, had the effect of revoking such will, but when the will was made by a man already married the birth of a child subsequent to the making of the will did not work a revocation of such will. In the absence of a statute, this principle of the common law must be held to be the law in this State.

This case was decided by Division A.

Appealed from the Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the court.

*Chris Matheson,* for Appellant.

*E. C. F. Sanchez* and *W. E. Baker,* for Appellee.

SHACKLEFORD, J.—Juanita Easterlin, by her next friend, Joe O'Bannon, filed her petition in the County Judge's Court, sitting as a court of probate, in and for Alachua County, in which she alleged that George W. Easterlin, her father, on the 12th day of January, 1909, executed a certain instrument in writing purporting to be his last will and testament, and afterwards, on the 16th day of December, 1910, departed this life, leaving as his heirs at law and legal representatives the petitioner, and Mrs. Bessie Godwin, his daughters, and Ada Easterlin, his widow. It is further alleged therein that the testator bequeathed and devised all of his estate, both real and personal, to his daughter, Bessie Godwin, Ada Easterlin

his widow, and to Callie Easterlin Fouria, his niece, leaving nothing to the petitioner and making no provision for her whatever. The petition further alleges that the petitioner was born on the 28th day of July, 1910, after the making of the will, by reason of which fact, coupled with the further fact that no provision was made in the will for the petitioner, it is claimed that such instrument, purporting to be the last will and testament of George W. Easterlin, deceased, was "revoked by act of law, and therefore null and void." It is further alleged that such instrument was admitted to probate on the 22nd day of December, 1910, and that letters testamentary were issued to Ada Easterlin, the person appointed in such instrument as the executrix thereof. The petitioner prayed for a revocation of the will and for general relief. A copy of the will was attached to the petition as an exhibit and made a part thereof. We copy the following paragraphs of such will:

"And as to my worldly estate and all the property, real, personal or mixed, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, to-wit:

1st: My will is, that all my just debts and funeral charges shall, by my executrix hereinafter named, be paid out of my estate, as soon after my decease as shall by her be found convenient.

2nd: I give, devise and bequeath to my daughter, Bessie Godwin, the following described real estate lying and being situated in Alachua County and State of Florida, to-wit: The southwest quarter of the northeast quarter and west half of the southeast quarter and southwest quarter of southeast quarter, northwest quarter, and north half of northeast quarter of northwest quarter of

Section Thirty-two, Township Seven, South of Range Eighteen east.

3rd: I give, devise and bequeath to my niece, Callie Easterlin Fournia, daughter of Charles B. Easterlin, deceased, all the following described real estate lying and being situated in the county of Alachua and State of Florida, to-wit: The Central one-third of the southwest quarter of Section twenty-eight, township seven, south of range eighteen east, and the central one-third of the northwest quarter of section thirty-three, township seven, south of range eighteen east, being the part of the Richardson land purchased by me from Sam Richardson.

4th: All the rest and residue of my estate, real, personal or mixed of which I shall die seized and possessed, or to which I shall be entitled at time of my decease, I give, devise and bequeath to my beloved wife, Ada Easterlin."

To this petition Ada Easterlin, as executrix, interposed a demurrer upon the following grounds:

"1st: That there is no sufficient ground alleged in said petition for revoking the will of the said George W. Easterlin.

2nd. Because the said Juanita Easterlin was living about six months before the said George W. Easterlin died.

3rd: Because there is no equity in said petitioner."

This demurrer was sustained by the county judge and from the judgment rendered by him the petitioner entered her appeal to the Circuit Court, in accordance with the provisions of Section 1710 of the General Statutes of 1906. The Circuit Court affirmed the judgment of the county judge, and the petitioner has appealed from the judgment of the Circuit Court to this court, as is also provided by such section.

As is readily apparent, one sole point is presented to us for determination. Does the birth of a child, subsequent to the making of a will by its father, have the effect of working a revocation of such will? This is the first time this court has been called upon to answer this question. We have no statute concerning the matter, as have many of the States, consequently we are relegated to the common law. We have held that "A will, not made in contemplation of matrimony, is revoked by the marriage of the testator and birth of a posthumous child subsequently to the making thereof." Belton v. Summer, 31 Fla. 139, 12 South. Rep. 371, 21 L. R. A. 146. We have also held that "Under the laws of this State the will of an unmarried woman, executed in 1884, was not *ipso facto* revoked by her subsequent marriage prior to April 5, 1891, but where such will purported to convey all of her property, and was not made in contemplation of a subsequent marriage, such subsequent marriage was under our laws as they then existed a total alteration of her circumstances, revoking the will." Colcord v. Conroy, 40 Fla. 97, 23 South. Rep. 561. These principles do not decide the point now before us, but the discussion in the two cited cases, particularly the last one, will be found suggestive and helpful. An investigation of the authorities has constrained us to the conclusion, however unwillingly, that, at the common law, the birth of a child, subsequent to the making of the will, did not have the effect of revoking the will of the father. A number of the leading cases upon the subject will be found collected in Colcord v. Conroy, *Supra,* and we shall not repeat them again here. See also 30 Amer. & Eng. Ency. of Law (2nd ed.) 649; Rood on Wills, Sec. 381; Underhill on Wills, Sec. 241; Page on Wills, Sec 283; Gardner on Wills, p. 282. The authorities cited in the respective notes, support the text.

Ellis v. Ellis, 2 DeSauss, Eq. (S. C.) 556, is directly in point. It was held therein as follows: "After making the will, and 18 months before testator's death, he has a son born, but dies without altering his will, or making any provision for such after-born child. This will is too precise to be disturbed. The court cannot give any relief to the unprovided child. It would be to revoke the will." The court well says that "this is an extreme hard case," but recognizes the fact, as we do, that its duty was to declare what the law is, not to make it. The reporter appends a note to the opinion to the effect that the extreme hardship of that case, as well as of a few others which had occurred of the same kind, induced the legislature to enact a statute.

The order must be affirmed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.